# 22-2923

IN THE

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

JORGE SANCHEZ

Plaintiff-Appellant

v.

KENNETH BUTRICKS, COUNSELOR CARBONE, CAPTAIN RODRIGUEZ, WILLIAM MULLIGAN

Defendants-Appellees

Appeal from the United States District Court for Connecticut

Case No. 20-CV-1229

The Honorable Omar A. Williams

**APPELLANT'S OPENING BRIEF**

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue, Unit 26152
Washington, DC 20001
202-455-4399

*Attorney for Plaintiff-Appellant*
*Jorge Sanchez*

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………….1

JURISDICTIONAL STATEMENT……………………………………………..1

ISSUES PRESENTED…………………………………………………………..2

BACKGROUND……………………………………………………………….....2

SUMMARY OF THE ARGUMENT………………………………………………4

STANDARD OF REVIEW……………………………………………………...5

ARGUMENT……………………………………………………………………….5

I. Failure to Accommodate Claims Do Not Require Discriminatory Animus……………………………………………………………...5

II. Defendants' Personal Involvement Arguments Before the District Court Also Misunderstand the Nature of Title II ADA Claims…..…………...7

III. No Other Basis Exists for this Court's Affirmance on Alternative Grounds…………………………………………………….………...8

a. Sanchez was denied meaningful access to a service, program, or activity……………………………………………….……………...9

b. Defendants did not provide, as a matter of law, a reasonable accommodation……………………………………………………..11

c. A fact question remains on whether Defendants were deliberately indifferent…………………………………….…………………..12

CONCLUSION…………………………………………………………………...13

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases**

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) .................. 11

*Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189 (2d Cir. 2014) .................................................................................................................... 10

*Fulton* v. *Goord*, 591 F.3d 37 (2d Cir. 2009)................................................6, 8, 11

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001)........ 7

*Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. 2015).................. 9

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129 (2d Cir. 2008) .................... 8

*Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009)...................... 12

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003)...................... 5

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ................................. 9

*Pierce v. Cty. of Orange*, 526 F.3d 1190 (9th Cir. 2008)....................................... 9

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) .................................................. 10

*Tennessee v. Lane*, 541 U.S. 509 (2004) ............................................................. 11

*Wright* v. *New York State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016)...........*passim*

**Statutes**

28 U.S.C. § 1291 ........................................................................................... 2

28 U.S.C. § 1331 ........................................................................................... 1

42 U.S.C. § 12101 ......................................................................................... 1

42 U.S.C. § 1983 ........................................................................................... 1

**Other Authorities**

28 C.F.R. § 35.152(b)(3) .............................................................................. 10

28 C.F.R. § 36.302 ........................................................................................ 6

Fed. R. App. P. 4 ........................................................................................... 2

Fed. R. Civ. P. 56 ......................................................................................... 13

## INTRODUCTION

Both Defendants and the district court treated Jorge Sanchez's disability law claim cursorily, each devoting a single paragraph to it in briefing and then deciding the issue on summary judgment. Defendants argued that they lacked both sufficient personal involvement and discriminatory animus in moving for summary judgment and the district court adopted both arguments in granting it.

These arguments misunderstand the principles of a claim for failure to accommodate under Title II of the Americans with Disabilities Act (ADA). To advance past summary judgment, Sanchez needed only to create a fact question on whether he had a qualifying disability, whether he lacked meaningful access to a service, program or activity at the prison on account of his disability, and whether the prison failed to reasonably accommodate his disability. He did so. This Court should reverse and remand for further proceedings.

## JURISDICTIONAL STATEMENT

Jorge Sanchez brought claims under the Americans with Disabilities Act and the Eighth Amendment of the U.S. Constitution. 42 U.S.C. § 12101; 42 U.S.C. § 1983. The district court had jurisdiction under 28 U.S.C. § 1331. The district court entered its judgment dismissing Sanchez's claim on September 26, 2022. A10. Sanchez filed a timely notice of appeal on October 3, 2022. A39;

*see* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

I. Whether the district court erred in requiring that Sanchez demonstrate discriminatory animus to establish a failure to accommodate claim under the ADA.

II. Whether this Court should affirm on grounds of personal involvement when the proper defendant to an ADA claim is a public entity, not Defendants in their individual capacity.

III. Whether this Court should affirm on any alternative ground when those arguments were not raised by Defendants or mentioned by the district court and they lack merit.

## BACKGROUND

As of 2020, Jorge Sanchez was in custody of the Connecticut Department of Corrections and had been for many years. A12. He walked with a cane from an injury preexisting his incarceration, many years previous. A15. Defendants were prison officials that were aware that Sanchez walked with a cane and he was housed in one of several special cells used to accommodate prisoners who needed mobility aids. *Id.*

Cheshire Correctional Institution is 110 years old and therefore has suffered from maintenance issues, such as leaky pipes and toilets. A18. In January 2020, Sanchez's cell began leaking water. A19. After several days it was fixed. *Id.* On or about April 27, 2020, Sanchez wrote to the maintenance supervisor alerting him that the toilet and sink in his cell were leaking again and asking that it be fixed. A36. He never received a response. *Id.* On the same day, he asked his unit manager, Captain Rodriguez, if he could be moved into another medical cell until the leak was fixed. *Id.* Captain Rodriguez denied the request. *Id.*

The leak was in front of the cell door and Sanchez did not feel safe walking in or out of the cell because he was afraid he would slip and fall, injuring himself or further aggravating his preexisting injury. *Id.* He was obligated, however, to leave his cell at least twice a day to visit the medical unit. A37. On May 15, approximately three weeks after he had first notified staff about the leak, he was leaving his cell to go the medical unit and slipped and fell, exacerbating his preexisting injury. *Id.* in the aftermath of the injury, however, staff returned him back into the cell with the leaking toilet and sink. *Id.* The following day, he asked for a reasonable accommodation from the prison's ADA coordinator, who ignored the request. *Id.* Two days later, he filed a formal grievance requesting this toilet and sink be fixed and it was the following day. *Id.*

Sanchez brought claims under both the Eighth Amendment and the ADA. A3.The district court granted summary judgment to Defendants on both. A8. There was "nothing in the record," the court held, "that indicates that the deprivation resulted from discriminatory animus." *Id.* It would not "infer discrimination" from the individual defendants' actions and there was "no other history of discrimination against Plaintiff." *Id.* The failure "to address the leak is more likely attributable to unintentional negligence than to discrimination," the court concluded. *Id.*

Sanchez timely appealed. A39.

## SUMMARY OF THE ARGUMENT

Jorge Sanchez created fact issues on all elements of his ADA claim. He introduced evidence that, despite long needing a cane to ambulate and being assigned to a cell for those with ambulatory disabilities, Defendants left him in a cell with leaking water for weeks until he inevitably slipped and fell, injuring himself.

The district court granted summary judgment to Defendants on two incorrect bases. First, it required discriminatory animus when failure to accommodate claims do not require differential treatment or the intent to discriminate. Second, the court found a lack of personal involvement from the individual defendants when a Title II claim is against a public entity, not individual defendants.

No basis exists for affirmance on an alternative ground. Sanchez was denied meaningful access to a service, program, or activity both because he had to risk

injury to leave his cell to obtain medical care and because a housing unit in prison is itself a service provided by a public entity. Defendants' eventual fixing of the leaks cannot qualify as a reasonable accommodation, as the reasonableness inquiry is context-specific and generally appropriate for a factfinder—leaving Sanchez in a leaking cell for weeks is not so plainly reasonable as to be an exception. And Sanchez introduced enough evidence that Defendants knew of and disregarded the risk that they were failing to accommodate his disability for his damages claim to proceed.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). "[A]ll factual inferences must be drawn in favor of the non-moving party." *Id.* Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

## ARGUMENT

### I. Failure to Accommodate Claims Do Not Require Discriminatory Animus.

The district court's primary basis for its decision was that Sanchez had not created a fact issue on whether Defendants acted out of discriminatory animus. A8. This conclusion misunderstands the requirements of a failure to accommodate claim

under the ADA, which by its definition is an alternative to an animus-based claim, not a subset of one.

A qualified individual can base a discrimination claim on either a showing of intentional discrimination or the failure to reasonably accommodate a disability. *Fulton* v. *Goord*, 591 F.3d 37, 43 (2d Cir. 2009). A failure to accommodate is a kind of discrimination that, perhaps counterintuitively, is marked not by different treatment but rather by similar treatment where difference is required. ADA regulations therefore impose an affirmative duty upon public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 36.302. The reasonableness of an accommodation is a fact-specific inquiry that is typically not conducive to resolution on summary judgment because "[d]etermining the "reasonableness of an [] accommodation is a 'fact-specific' question that often must be resolved by a factfinder." *Wright* v. *New York State Dep't of Corr.*, 831 F.3d 64, 72–73 (2d Cir. 2016); *see also Fulton*, 591 F.3d at 44 (2d Cir. 2009) (recognizing that a court's evaluation of a reasonable accommodation is a "fact-specific, case-by-case inquiry"). Sanchez has created a fact issue on whether his disabilities were reasonably accommodated when, as someone with a mobility impairment, he was left in a slippery cell with sitting water for an extended period, resulting in a hard fall.

*Wright* is an example of such a claim. A prisoner with mobility limitations was given a manual wheelchair, a quad cane, knee pads, customized chair cushions, and the use of a mobility aide program where he could request the help of aides to push him around the prison. 831 F.3d at 69. He was not, however, given a motorized wheelchair. *Id.* Because aides were not always available to help, he was at times denied access to the prison's programs or services and was deterred from going out on recreation because his lack of mobility made him lonely and vulnerable. *Id.* at 73-75. This Court ruled for the plaintiff, holding that "these shortcomings are examples of Wright being denied meaningful access to prison services, programs, and activities." *Id.* at 73.

## II. Defendants' Personal Involvement Arguments Before the District Court Also Misunderstand the Nature of Title II ADA Claims.

The district court also suggested that it was granting summary judgment on Sanchez's ADA claim because of the lack of personal involvement of the individual defendants, as Defendants argued. A8. This conclusion suffers from several problems, most importantly that it mistakes the identity of the proper defendant in a Title II ADA claim. Constitutional damages claims are against defendants in their individual capacity, but Title II claims function differently. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Sanchez's ADA claim is against Defendants in their official capacities, which is equivalent to a suit against the public entity itself, here the Connecticut Department of Corrections. *Id.*

The question is therefore not whether the individual defendants failed to accommodate his disability but instead whether the public entity did.

There remains a fact question on this issue. The Department was clearly aware of his injury, as it predated his incarceration of 29 years and counting. A12. Countless staff members would have been aware of his impairment, both because he used a cane to ambulate and because the Department housed him in a cell designed for those with mobility impairments. A15. As of 2020, the prison was 107 years old and encountered problems with leaks in pipes and toilet seals, including in his exact cell just months before. A18–19. And Sanchez informed several staff members of the leak on this occasion in addition to those who presumably witnessed sitting water at the door of a cell for several weeks. A36-37. Dissecting exactly which defendant knew what and when is necessary to determine constitutional liability against individuals but Sanchez has more than sufficiently established a fact question for the liability of the public entity.

## III. No Other Basis Exists for this Court's Affirmance on Alternative Grounds.

This Court should not reach any alternative ground for affirmance, as Defendants had the burden of demonstrating they were entitled to summary judgment and failed to raise any other arguments, thereby forfeiting them. *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008). Even were this Court to believe an issue could be an alternative ground for affirmance, it should

remand for the district court to decide it in the first instance. *See Fulton*, 591 F.3d at 45. No such grounds, however, exist.

*a) Sanchez was denied meaningful access to a service, program, or activity.*

Sanchez has created a fact issue on whether he was denied meaningful access to services, programs, or activities in at least two different respects. First, he testified that he was required to leave his cell twice a day to visit the medical unit and the leaking toilet and sink were directly in front of his cell door. A37. These visits to the medical unit were a service provided by a public entity. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (citing medical services as part of the statutory definition of service, program, or activity in Title II of the ADA). So too were the vast majority of services at the prison that by definition take place outside of a prisoner's cell. *See, e.g.*, *Wright*, 831 F.3d at 73 (prisoner with a mobility impairment was unable to access the law library, doctor appointments, meals, the bathroom, jobs, and recreation).

Second, in the context of prison, a housing unit that one can safely navigate is itself a service, program, or activity provided (or not) by a public entity. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1224 (9th Cir. 2008) ("Providing inmates with appropriate and adequate bedding and bathroom facilities are 'services' of the jail" for purposes of the ADA); *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 935–36 (N.D. Cal. 2015) ("Because of the unique nature of correctional facilities, in

which jail staff control nearly all aspects of inmates' daily lives, most everything provided to inmates is a public service, program or activity."). The Department of Justice has issued regulations under Title II of the ADA that require that prisons "ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." 28 C.F.R. § 35.152(b)(3). Even were Sanchez to have never left his cell, Defendants denied him meaningful access to a service, program, or activity by making navigating his cell dangerous.

Importantly, Sanchez has created a fact issue on meaningful access even if he is physically capable of accessing services so long as doing so risks injury. "A violation of Title II … does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be 'readily accessible.'" *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (quoting 28 C.F.R. § 35.150). In *Wright*, for example, the wheelchair-bound plaintiff was able to use a manual wheelchair to access services but it caused him pain, so this Court held that banning him from using a motorized wheelchair violated the ADA. 831 F.3d at 70; *see also Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189, 200 (2d Cir. 2014) (finding a denial of meaningful access to voting program under the ADA, "[a]lthough [plaintiffs] were ultimately able to cast their vote with the fortuitous assistance of

others”). The U.S. Supreme Court’s paradigmatic Title II case, *Tennessee v. Lane*, involved plaintiffs with mobility impairments who had to crawl or be carried up flights of stairs to reach the second floor of a courthouse. 541 U.S. 509, 513 (2004). No party suggested that the plaintiffs had meaningful access to the courts even though they could physically reach them by risking injury. Congress in passing the ADA enacted a broader mandate for equality. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134–35 (9th Cir. 2012) (rejecting defendant’s argument that it must only provide “necessary” accommodations as that “would require very few accommodations indeed. After all, a paraplegic *can* enter a courthouse by dragging himself up the front steps, so lifts and ramps would not be ‘necessary’ … And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends. That’s not the world we live in.”).

*b) Defendants did not provide, as a matter of law, a reasonable accommodation.*

This Court should not affirm on the alternative basis that Defendants reasonably accommodated Sanchez’s disability by eventually fixing the leaks in his cell after they caused him injury. Like many reasonableness inquires, the reasonableness of an accommodation is a context-specific and case-by-case inquiry that will almost always be appropriately decided by a factfinder, not a court as a matter of law. *Wright*, 831 F.3d at 72–73; *see also Fulton*, 591 F.3d at 44 (2d Cir.

2009) (recognizing that a court's evaluation of a reasonable accommodation is a "fact-specific, case-by-case inquiry").

*Wright* is instructive in this regard. The prison system provided the plaintiff "a quad cane, a manual wheelchair, use of his customized cushion, knee pads, wheelchair accessible living space, and access to mobility aides from the mobility assistance program." *Wright*, 831 F.3d at 73. Nonetheless, this Court held that these accommodations were not so plainly reasonable as a matter of law to justify affirmance because the plaintiff was still dissuaded from some services by not having an electric wheelchair, for example "avoid[ing] recreational time in the prison yard because he fears he would be unable to escape quickly in the event of a prison fight." *Id.* Even if a factfinder could find ultimately that Defendants acted reasonably in leaving Sanchez in a leaking cell for weeks, this conclusion is not so plain as to justify holding as much as a matter of law.

*c) A fact question remains on whether Defendants were deliberately indifferent.*

Because Sanchez seeks damages and not just equitable relief, Sanchez will ultimately have to demonstrate that Defendants were deliberately indifferent to a risk of disability discrimination. *Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009). A plaintiff can demonstrate deliberate indifference in the Title II context where an official with authority to address the alleged discrimination and to institute corrective measures on the plaintiff's behalf had actual knowledge of

ongoing discrimination against the plaintiff but failed to respond adequately. *Id.* For the reasons articulated in Section II, a fact question remains as to whether Defendants were deliberately indifferent.

The district court, in a sense, concluded to the contrary by writing that the "failure to address the leak is more likely attributable to unintentional negligence than to discrimination." A8. This conclusion is mistaken for multiple reasons. First, "more likely" than not is, of course, not the summary judgment standard under Fed. R. Civ. P. 56. The question is whether there remained disputed questions of material fact as to this element of Sanchez's claim, and there did. Second, the appropriate legal question is focused on deliberate indifference, a *mens rea* standard in between animus-based discrimination and mere negligence—the knowing disregard of a substantial risk that Defendants had failed to accommodate Sanchez's disability. Through the public entity's awareness of Sanchez's longstanding disability, the water leaks in his cell, and the inherent risks of this combination, Sanchez has created a fact issue on this element.

## CONCLUSION

This Court should reverse the district court's order granting summary judgment to Defendants on Sanchez's ADA claim and remand for further proceedings.

Date: September 20, 2023

*<u>/s/ Samuel Weiss</u>*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Jorge Sanchez

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: September 20, 2023

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
*Attorney for Appellant Jorge Sanchez*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,044 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: September 20, 2023

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
*Attorney for Appellant Jorge Sanchez*