# 22-2923

# United States Court of Appeals

*for the*

# Second Circuit

JORGE SANCHEZ,

*Plaintiff-Appellant,*

– v. –

KENNETH BUTRICKS, CARBONE, Counselor Supervisor/Americans with Disabilities Act Coordinator, RODRIGUEZ, Captain,

*Defendants-Appellees,*

WILLIAM MULLIGAN,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF FOR DEFENDANTS-APPELLEES

DEANN S. VARUNES
ASSISTANT ATTORNEY GENERAL
CONNECTICUT OFFICE
OF THE ATTORNEY GENERAL
DEPARTMENT OF PUBLIC SAFETY
*Attorney for Defendants-Appellees*
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5318

COUNSEL PRESS (800) 4-APPEAL • (325961)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

COUNTER STATEMENT OF THE ISSUES ........ 1

INTRODUCTION ........ 2

STATEMENT OF THE CASE ........ 3

STANDARD OF REVIEW ........ 8

SUMMARY OF ARGUMENT ........ 10

ARGUMENT ........ 11

I. The District Court Correctly Found Defendants Are Protected by Eleventh Amendment Immunity Because They Lacked Discriminatory Animus ........ 11

A. Mr. Sanchez failed to show a dispute of fact that defendants were motivated by the requisite discriminatory animus ........ 11

B. Mr. Sanchez's arguments miss the Eleventh Amendment mark ........ 15

C. *Garcia* remains the rule in the Second Circuit - but this Court should affirm even if *Garcia* has been supplanted ........ 18

II. The District Court Correctly Granted Summary Judgment Since Mr. Sanchez Failed to Establish the Elements Of His ADA Claim ........ 22

A. There is no evidence defendants refused to provide reasonable accommodations ........ 23

B. Mr. Sanchez received a reasonable accommodation.....................................................25

CONCLUSION ..................................................................................................27

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ...........................................................................................................28

CERTIFICATION OF SERVICE ........................................................................29

## TABLE OF AUTHORITIES

### CASES

*Alabama v. Pugh*

438 U.S. 781 (1978)........................................................................11

*Anderson v. Liberty Lobby, Inc.*

477 U.S. 242 (1986)........................................................................8, 9

*Bartlett v. New York State Bd. Of Law Exam'rs*

156 F.3d 321 (1998)........................................................................17

*Baron v. Laws.' Fund for Client Prot.*

2023 U.S. App. LEXIS 3458
(2d Cir. Feb. 14, 2023)....................................................................25

*Bd. Of Trs. v. Garrett*

531 U.S. 356 (2001)........................................................................12, 21

*Cosby v. Rusi*

20-CV-459, 2020 U.S. Dist. LEXIS 115676
(D. Conn. July 1, 2020)....................................................................19

*Cox v. Warwick Valley Cent. Sch. Dist.*

654 F.3d 267 (2d Cir. 2011)............................................................8

*Davis v. Shah*

821 F.3d 231 (2d Cir. 2016)............................................................18

*Dean v. Univ. at Buffalo Sch. Of Med. & Biomedical Scis.*

804 F.3d 179 (2d Cir. 2015)....................................................19

*Fulton v. Goord*

591 F.3d 37 (2d Cir. 2009)......................................................15

*Garcia v. State Univ. of N.Y. Health Scis. Ctr.*

280 F.3d 98 (2d Cir. 2001) .............................................*passim*

*Hargrave v. Vermont*

340 F.3d 27 (2d Cir. 2003)..................................................23

*Kearney v. N.Y.S.D.O.C.S.*

11-CV-1281, 2013 U.S. Dist. LEXIS 140932
(N.D.N.Y. Jul 31, 2013)................................................25, 26

*Keitt v. N.Y. City*

882 F. Supp. 2d 412 (S.D.N.Y. 2011)......................................14

*Kentucky v. Graham*

473 U.S. 159 (1985)..........................................................12

*Knight v. U.S. Fire. Ins. Co.*

804 F.2d 9 (2d Cir. 1986), *cert. denied*,
480 U.S. 932 (1987)..........................................................9

*Loeffler v. Staten Island Univ. Hosp.*

582 F.3d 268 (2d Cir. 2009)....................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*

475 U.S. 574 (1986)........................................................8

*McElwee v. Cnty. Of Orange*

700 F.3d 635 (2d Cir. 2012)..............................................26

*Monroe v. Gerbing*

16-CV-2818, 2017 U.S. Dist. LEXIS 212172
(S.D.N.Y. Dec. 27, 2017)..................................................19

*Monroe v. N.Y. State Dep't of Corr. & Cmty. Supervision*

16-CV-2818, 2019 U.S. Dist. LEXIS 164527
(S.D.N.Y. Sept. 25, 2019)..................................................14

*Paschal-Barros v. Quiros*

21-CV-698, 21-CV-700, 2022 U.S. Dist. LEXIS 6641
(D. Conn. Jan. 13, 2022)...................................................19

*Pennsylvania Dep't Corr. V. Yeskey*

524 U.S. 206 (1998).........................................................23

*Russell v. New York,* 18-CV-8543

2019 U.S. Dist. LEXIS 169558 (S.D.N.Y. Sept. 30, 2019).............14

*United States v. Georgia*

546 U.S. 151 (2006)............................................... 12, 20, 21

*Wright v. Giuliani*

230 F.3ed 543 (2d Cir. 2000)..............................................26

*Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*

831 F.3d 64 (2d Cir. 2016)....................................................11, 26

*Zarda v. Altitude Express*

855 F.3d 76 (2d Cir. 2017).........................................................18

**OTHER AUTHORITY**

42 U.S.C. § 120142, *et. seq*...........................................................3

Federal Rule of Civil Procedure 56(c)...............................................8

## COUNTER STATEMENT OF THE ISSUES

To prevail on a Title II Americans with Disabilities Act (ADA) claim for money damages against a state actor, a plaintiff must prove every element of the claim and also—even on a reasonable accommodation theory—show discriminatory animus. *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98 (2d Cir. 2001). Here, plaintiff Jorge Sanchez presses a claim for ADA money damages against employees of Connecticut's Department of Correction in their official capacities.

The issues on appeal are:

I. Whether the District Court correctly granted summary judgment for the defendants, where Mr. Sanchez does not even claim a material dispute about discriminatory animus.

II. Whether the defendants were entitled to summary judgment on the ground that Mr. Sanchez failed to establish the elements of an ADA violation.

## INTRODUCTION

Plaintiff Jorge Sanchez sued Connecticut officials for damages under Title II of the Americans with Disabilities Act, claiming that he slipped and fell in his prison cell because they failed to reasonably accommodate his disability. But the district court correctly granted the defendants summary judgment, and this Court should affirm, for two reasons.

First: All defendants are protected by Connecticut's Eleventh Amendment immunity. In the Second Circuit, a plaintiff must prove discriminatory animus to recover Title II damages against state actors sued in their official capacities—even when suing under a reasonable accommodation theory. *Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F3d 98 (2d Cir. 2001). Mr. Sanchez did not even try. And even now, he does not claim a triable issue of material fact that any defendant intentionally discriminated against him.

Second: Mr. Sanchez did not make out the elements of his Title II claim, because he did not show that he timely requested a reasonable accommodation from any state actor who was in position to help him.

## STATEMENT OF THE CASE

### I. Inmate Jorge Sanchez Sues After Falling in His Cell.

On August 21, 2020, Jorge Sanchez—an inmate in the custody of the Connecticut Department of Correction—commenced this action, which arises from his May 15, 2020 slip and fall on water in his prison cell. SA-5. Mr. Sanchez, who has a physical disability and walks with a cane, was housed in a handicap-accessible cell. SA-3, SA-7. He says that the fall, which allegedly exacerbated a preexisting medical condition, resulted from Defendants' failure to fix a leak in his cell. And he asserts that Defendants refused to provide him with a reasonable accommodation by moving him to another accessible cell until the leak was repaired. SA-5-6. Mr. Sanchez' complaint asserted (1) an Eighth Amendment claim sounding in deliberate indifference to his safety and (2) a violation of Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 120142, et seq. SA-1.

On April 2, 2021, the District Court screened Mr. Sanchez' *pro se* complaint to identify potentially meritorious claims and issued an Initial Review Order (IRO). SA-23-25.

The IRO allowed Mr. Sanchez to pursue his Eighth Amendment claim—alleging that water on the floor exposed him to a substantial risk of serious harm—against Kenneth Butricks, as Warden of Cheshire Correctional Institution ("CCI"); Eric Carbone, Counselor Supervisor and ADA Coordinator at CCI; and Israel Rodriguez, Correctional Captain of CCI (collectively, the "defendants"). SA-30. And, leaving sovereign immunity for later, SA-31, the IRO also allowed Mr. Sanchez to proceed against the same defendants in their official capacities for money damages on his ADA claim arising from the alleged refusal to provide a reasonable accommodation in the form of a different handicap-accessible cell. SA-32.

The District Court granted Mr. Sanchez' motion to appoint counsel on July 10, 2021. ECF # 24.[1] Counsel appeared on August 2, 2021, ECF # 27. On February 22, 2022, the defendants moved for summary judgment, ECF # 31, and Mr. Sanchez filed an opposition on May 18, 2022, ECF # 38, # 39, which he corrected on August 29, 2022. ECF # 41.

---

[1] References to the District Court docket appear herein as "ECF # __".

## II. The District Court Grants Summary Judgment for Defendants, and Mr. Sanchez Appeals.

On September 23, 2022, the District Court granted defendants summary judgment on all claims. A001–009.

First, the District Court resolved the Eighth Amendment claim, concluding that no reasonable juror could find defendants were deliberately indifferent to Mr. Sanchez' health and safety—largely because the defendants did not know about, or were not in position to fix, the leak. SA-4. Warden Butricks was unaware of the leak until after it was fixed. SA-5-6. Counselor Carbone was no longer ADA Coordinator at CCI when the leak began in Mr. Sanchez' cell. SA-6. And, undisputedly, Mr. Sanchez never filed a request for a reasonable accommodation to alert the ADA Coordinator of the problem until after he fell. SA-6.

When it came to Captain Rodriguez, the record supported nothing more than negligence—and negligence is not enough for Eighth Amendment deliberate indifference. SA-6-7. As the District Court noted, Defendant Rodriguez had a record of responding promptly to Mr. Sanchez' concerns: in January 2020, before the incidents giving rise to this case, Defendant Rodriguez had ordered a fix in Mr. Sanchez' cell and

made sure the repair was accomplished the next day. But in May 2020, when Mr. Sanchez asked him for a transfer to another cell, Defendant Rodriguez was no longer even assigned to Mr. Sanchez' unit. SA-7.

Turning to the ADA count, the District Court held that there was no dispute of material fact that defendants did not act with the requisite intent. Under Second Circuit precedent, a plaintiff seeking ADA Title II damages from state actors in their official capacities can only overcome Eleventh Amendment immunity with a showing that the defendants were motivated by discriminatory animus. But, the District Court concluded, no reasonable juror could find discriminatory animus on this record. SA-8. Among the facts undercutting any plausible claim of intentional discrimination: No evidence supported Plaintiff's assertion that "inmates without disabilities are given transfers to different cells in similar circumstances and it is undisputed that (1) Plaintiff only requested a reasonable accommodation after his fall and (2) the leak was fixed within a few days of that request." SA-8. And "[e]ven assuming that Plaintiff's verbal request either to Defendant Carbone or to Defendant Rodriguez also constituted a request for a reasonable accommodation, the

court cannot infer discrimination from either defendant's response or lack thereof . . .". SA-8.

Mr. Sanchez filed his appeal on October 3, 2022. On appeal, he does not challenge the District Court's Eighth Amendment ruling. *See* Plaintiff-Appellant's Brief pp. 4-5. So his only surviving claim is a Title II ADA claim for money damages, brought against all defendants in their official capacities.

## STANDARD OF REVIEW

This Court reviews an order granting summary judgment de novo. *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 271 (2d Cir. 2011).

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A nonmoving party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987).

## SUMMARY OF ARGUMENT

This Court should affirm for two reasons.

First: The District Court correctly held that Mr. Sanchez failed to show a dispute of fact that defendants were motivated by the requisite discriminatory animus to overcome Eleventh Amendment immunity. Mr. Sanchez suggests that the district court looked for discriminatory animus because it misunderstood his ADA theory. But even a reasonable accommodation damages claim cannot proceed against state actors without a showing of discriminatory animus.

Second: Mr. Sanchez did not make out the elements of an ADA Title II claim. The District Court correctly held Mr. Sanchez failed to show any evidence that any defendant knew about his reasonable accommodation request before he fell. By his own admission, Mr. Sanchez made one request to only one of the defendants prior to his slip and fall; made two subsequent written requests; and had the leak in his cell repaired within a few days of falling. Pltf's Brief at 3, see also SA-36-37. None of the named defendants had any involvement in his cell assignments, much

less any hint of discriminatory animus toward Sanchez. And the District Court found that Mr. Sanchez received the accommodation he requested.

## ARGUMENT

### I. The District Court Correctly Found that Defendants Are Protected by Eleventh Amendment Immunity Because They Lacked Discriminatory Animus.

#### A. Mr. Sanchez failed to show a dispute of fact that defendants were motivated by the requisite discriminatory animus.

The District Court correctly granted the defendants summary judgment because Mr. Sanchez failed to establish a dispute of material fact that defendants were motivated by discriminatory animus. Mr. Sanchez needed to clear that hurdle because the defendants are protected by Connecticut's Eleventh Amendment immunity.[2]

The Eleventh Amendment shields states and their employees—sued in their official capacities—from suit in federal courts. *Alabama v.*

---

[2] Mr. Sanchez relies on *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 832 F.3d 64 (2d Cir. 2016) for the proposition that he need only show that his disability was not reasonably accommodated to defeat summary judgment. But the plaintiff in *Wright* sought only declaratory and injunctive relief, not money damages. *Id.* at 71. Here, Mr. Sanchez seeks only money damages, implicating the Eleventh Amendment bar.

*Pugh*, 438 U.S. 781 (1978); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Garcia*, 280 F.3d at 107 ("Insofar as Garcia is suing the individual defendants in their official capacities, he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent that it shields SUNY."). Congress can abrogate Eleventh Amendment immunity–but only "when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks omitted).

Congress wanted the ADA's Title II to abrogate Eleventh Amendment immunity—but that abrogation only works to the extent that the ADA represents a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. *Garcia*, 280 F.3d at 108; *United States v. Georgia,* 546 U.S. 151, 159 (2006). So, as a rule, Title II plaintiffs suing states cannot recover money damages for conduct that does not violate both the ADA and the Fourteenth Amendment. *Georgia,* 546 U.S. at 159 ("[I]nsofar as Title II creates a private cause of action for damages against

the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates states sovereign immunity.")

*Garcia* held that plaintiffs can only maintain Title II money damages claims against a state actor if they show that the offending conduct was motivated by discriminatory animus or ill will due to disability. *Garcia,* 280 F.3d at 111. The showing of animus ensures that conduct giving rise to Title II damages also violates the heartland of the Fourteenth Amendment's protections. *Id.*

That is where Mr. Sanchez' claim fails. As the District Court correctly held, applying *Garcia*'s standard: "[T]here is nothing in the record that indicates that the deprivation resulted from discriminatory animus." A008. Even now, Mr. Sanchez points to no evidence of discriminatory animus. He alleges that defendants knew, or should have known, of his disability—but that is not enough: "Simply requiring a 'knowing' violation of Title II would still leave states subject to monetary liability for the full spectrum of conduct proscribed by the title even though, as we have already discussed, these proscriptions far exceed the authority afforded Congress under § 5." *Garcia,* 280 F.3d at 112.

Mr. Sanchez points to no facts suggesting that any putative refusal to provide him with another handicapped cell was motivated by his disability, and bare conclusory allegations will not do. *See Russell v. New York*, 18-CV-8543, 2019 U.S. Dist. LEXIS 169558, *5 (S.D.N.Y. Sept. 30, 2019) ("Although Plaintiff broadly asserts that Defendants 'intentionally discriminated against Plaintiff . . .,' such vague, unsupported allegations are insufficient to establish the discriminatory animus necessary to abrogate Defendants' sovereign immunity"). Nor should this Court infer animus from an alleged denial of services. *Compare Monroe v. N.Y. State Dep't of Corr. & Cmty. Supervision,* 16-CV-2818, 2019 U.S. Dist. LEXIS 164527, *10 (S.D.N.Y. Sept. 25, 2019) (noting that denial of access to services may violate the ADA but is not sufficient by itself to find animus or ill will) *with Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 455 (S.D.N.Y. 2011) (finding animus alleged where plaintiff's teacher instructed him to stop requesting accommodations "because the prison does not provide such to learning disabled dyslexic inmates" and threatened the plaintiff for failing to "keep up with other students").

There is no material dispute here: No reasonable juror could find, on this record, that defendants were motivated by discriminatory animus. So this Court should affirm because the defendants are protected by the Eleventh Amendment.

### B. Mr. Sanchez' arguments miss the Eleventh Amendment mark.

Mr. Sanchez mistakenly argues that the District Court erred by analyzing his claim under the wrong Title II theory. He points out that this is a reasonable accommodations claim—and so, he argues, the District Court was wrong to look for evidence of discriminatory animus. But the Eleventh Amendment applies to reasonable accommodations claims, too.

Mr. Sanchez is right that a plaintiff can proceed under any or all of three Title II theories: "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; [or] (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). And he has chosen a reasonable accommodation theory. But he still has to create a dispute of material fact about discriminatory animus

to survive Eleventh Amendment scrutiny. *Garcia* specifically explains why some reasonable accommodation theories cannot be the basis for claims against states because—since they do not show intentional discrimination—these theories would penalize behavior that is not proscribed by the Fourteenth Amendment. *Garcia,* 280 F.3d at 110-11.

So, contrary to Mr. Sanchez' arguments at pp. 5-7 of his brief, the District Court's discriminatory animus analysis, A008, did not misunderstand Mr. Sanchez' theory. Instead, the District Court correctly explained why Mr. Sanchez cannot clear the Eleventh Amendment bar.

Even Mr. Sanchez acknowledges that he must ultimately show some level of intentional discrimination. He just sets the bar too low and too late. At p. 12 of his opening brief, he avers: "Because Sanchez seeks damages and not just equitable relief, Sanchez will ultimately have to demonstrate that Defendants were deliberately indifferent to a risk of disability discrimination. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009)." That's too late: His use of "ultimately" suggests he bears no such burden until some point in time after adjudication of

the defendants' summary judgment motion. But the Eleventh Amendment is a bar both now and later.

And *Loeffler*'s standard is too low for this ADA Title II case. The Rehabilitation Act claim in *Loeffler* has something in common with the Title II ADA claim here: To win, a plaintiff advancing either claim must show an intentional violation. *Bartlett v. New York State Bd. of Law Exam'rs*, 156 F.3d 321, 331 (1998) ("The law is well settled that intentional violations of Title VI, and thus the ADA and the Rehabilitation Act, can call for an award of money damages."). But, as *Garcia* explains, and ADA claim and a Rehabilitation Act claim are also relevantly different. ADA claims against state actors require a showing of discriminatory animus, because they must be proportional to the Fourteenth Amendment. But the lesser showing of deliberate indifference is enough in Rehabilitation Act claims: "[D]eliberate indifference remains the necessary showing for § 504 claims since the Rehabilitation Act was enacted pursuant to Congress's Spending Clause authority and therefore does not require that damage remedies be tailored to be congruent and proportional to the proscriptions of the

Fourteenth Amendment." *Garcia*, 280 F.3d at 115. And there is no serious argument that *Loeffler*'s Rehabilitation Act rule has somehow supplanted *Garcia*'s rule in the ADA context. *Loeffler* itself did not say so. And, seven years after *Loeffler*, this Court reaffirmed that "claims for damages under Title II require proof of discriminatory animus…." *Davis v. Shah*, 821 F.3d 231, 260 n.22 (2d Cir. 2016).

*Garcia*, not *Loeffler*, controls here. To survive summary judgment, Mr. Sanchez had to raise a dispute of material fact as to discriminatory animus. He did not, so this Court should affirm.

### C. *Garcia* remains the rule in the Second Circuit—but this Court should affirm even if *Garcia* has been supplanted.

*Garcia* remains the law in this Circuit. *Davis,* supra, 821 F.3d at 260 n.22 (2d Cir. 2016). Mr. Sanchez does not ask this Court to reverse it. Nor could he. *See Zarda v. Altitude Express*, 855 F.3d 76, 80 (2d Cir. 2017) (noting that three-judge panel "lacks the power to overturn Circuit precedent.").

But the United States Supreme Court's 2006 decision in *Georgia* "led to a divergence in the approaches adopted by district courts in this

Circuit in their assessment of Congress's abrogation of sovereign immunity under Title II." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015). As *Davis* shows, that "divergence" has not led this Court to abandon *Garcia*, which many district courts continue to apply. *See, e.g.*, *Paschal-Barros v. Quiros*, 21-CV-698; 21-CV-700, 2022 U.S. Dist. LEXIS 6641, *17 (D. Conn. Jan. 13, 2022); *Cosby v. Rusi*, 20-CV-459, 2020 U.S. Dist. LEXIS 115676, *5 (D. Conn. July 1, 2020); *Monroe v. Gerbing*, 16-CV-2818, 2017 U.S. Dist. LEXIS 212172, *15 (S.D.N.Y. Dec. 27, 2017) (collecting cases). And there is no need to resolve any divergence now, because *Georgia* and *Garcia* yield the same result here: Affirmance.

*Georgia* articulated a three-part test for evaluating ADA claims against state actors. Courts must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of

sovereign immunity as to that class of conduct is nevertheless valid." *Georgia,* 546 U.S. at 159.

Looking to *Georgia*'s step 1: Mr. Sanchez asserts a reasonable accommodation theory, and he does not try to show intentional discrimination. He alleges only that he is disabled, which defendants do not contest at this stage; that the ADA applies to state prisons, which defendants also do not contest; and that defendants knew he was disabled, and received his reasonable accommodation request, but failed to give him a new, handicap-accessible cell. As the defendants show below, in the second section of this argument, this alleged behavior does not meet the elements of a Title II reasonable accommodation claim.

Next, at *Georgia*'s step 2, Mr. Sanchez falters for the same reason that he cannot win under *Garcia*: The behavior he alleges does not violate the Fourteenth Amendment. *Garcia* itself explains why reasonable accommodation claims like Mr. Sanchez' are not actionable under the Fourteenth Amendment. Title II requires states to offer accommodations unless the state can carry the burden of showing that the accommodation is unreasonable. *Garcia,* 280 F.3d at 109-10. But the Fourteenth

Amendment is much narrower: "[T]he absence of a reasonable accommodation would be permissible under the Fourteenth Amendment so long as there were *any* rational basis for the absence…" *Id.* (emphasis in original); *and see Bd. of Trs. v. Garrett*, 531 U.S. 356, 367 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational."). Mr. Sanchez never alleges that the defendants did not behave rationally, and there are myriad rational explanations for the conduct he alleged—including that defendants did their best even though they were overworked and understaffed, responding promptly when they actually received notice of his complaint.

Finally, under *Georgia*'s third step, this Court must consider whether Congress abrogated sovereign immunity here even though defendants' conduct did not violate the Fourteenth Amendment. That means trying to identify an alternative "basic constitutional guarantee" that Congress sought to enforce through abrogating immunity in this context. *Georgia*, 546 U.S. at 161. Plaintiff doesn't even try to lift that heavy burden, and he wouldn't succeed if he did. The only other

conceivably relevant constitutional guarantee here is the Eighth Amendment. And, as the District Court held, there was no Eighth Amendment violation here. Mr. Sanchez does not contest that holding on appeal.

Whether under *Garcia* or *Georgia*, then, defendants are protected by the Eleventh Amendment. The District Court correctly held that Mr. Sanchez created no issue of fact about whether the immunity applies. So this Court should affirm.

## II. The District Court Correctly Granted Summary Judgment Since Plaintiff Failed to Establish the Elements of his ADA Claim.

This Court should affirm even if Mr. Sanchez could clear the Eleventh Amendment bar, since no reasonable juror could find that he proved the elements of his ADA claim. The District Court held that Mr. Sanchez failed to state a claim upon which relief could be granted under Title II of the ADA. In doing so, it found there was no evidence that any defendant knew about Mr. Sanchez' reasonable accommodation request before he fell and Mr. Sanchez received the accommodation that he requested.

### A. There is no evidence Defendants refused to provide reasonable accommodations.

Mr. Sanchez alleges that he suffers from a deteriorating hip that requires him to walk with a cane. He claims that his disability substantially limits him in life activities of walking, thereby satisfying the first element of a Title II ADA claim. *See Hargrave v. Vermont,* 340 F.3d 27, 34–35 (2d Cir. 2003).

Because the Department of Correction is an entity subject to the ADA, Mr. Sanchez has also met the second element of a Title II ADA claim. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

But the District Court, on the summary judgment record, correctly concluded that Mr. Sanchez failed to provide evidence about the third element of Title II of the ADA: that his alleged exclusion or discrimination was due to his disability. This is because defendants showed that they could not have refused Ms. Sanchez reasonable accommodations. Defendant Butricks only learned of a possible need for reasonable accommodations after Mr. Sanchez fell and after the leak had been fixed. SA-55–56. Defendant Carbone, undisputedly, was no longer in position to provide relief when he learned of Mr. Sanchez' request. SA-

66. And, by the time Mr. Sanchez made his request to Defendant Rodriguez, he was no longer assigned to the unit where Mr. Sanchez was housed in April 2020 and May 2020. SA-78.

Mr. Sanchez does not dispute any of this. In his Local Rule 56(a)(2) Statement of Undisputed Facts, Mr. Sanchez admitted he could have submitted a request to the ADA Coordinator for a reasonable accommodation at any time prior to May 15, 2020, when he fell. A023. He knew Counselor Carbone was no longer the ADA Coordinator when he filed a written Request for Reasonable Accommodations. A024. He admits that Captain Rodriguez was no longer assigned to his unit in April 2020. A024. And he only filed his grievance to Warden Butricks after he fell on May 15, 2020. SA-12.

Plaintiff cannot argue he was denied accommodations in one breath and acknowledge, in the next, that he never sought accommodations from anyone in position to provide them. So instead he argues that it does not matter whom he sued, when he made his request, or who knew what when. Instead, according to pp. 7-8 of his brief, all knowledge and intent

in this case should be imputed to all state actors across all time—even, apparently, state actors who are not sued here.

But that argument confuses parties and proof. It may be true that Connecticut is the real party in interest, since the state will be on the hook for any damages. *Garcia*, 280 F.3d at 107. But that does not absolve Mr. Sanchez of the obligation to specifically plead and prove that one or more individual defendants received his reasonable accommodation request in time to do something about it. *See Barone v. Laws.' Fund for Client Prot.*, 2023 U.S. App. LEXIS 3458, *5-6 (2d Cir. Feb. 14, 2023) (unpublished opinion) ("But Barone's complaint contains no plausible allegations that either of the Defendants' actions were taken *by reason* of his PTSD, or even that they were *aware* of his PTSD.") (emphasis in original).

**B. Mr. Sanchez received a reasonable accommodation.**

"The Second Circuit has explained that although the public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *Kearney v. N.Y.S. D.O.C.S.,* 9:11–CV–

1281, 2013 WL 5437372, at *8 (N.D.N.Y. Sept. 27, 2013) (citing *McElwee v. Cnty. of Orange,* 700 F.3d 635, 640 (2d Cir. 2012)) (granting summary judgment on ADA and Rehabilitation Act claims based on the denial of a request to transfer the plaintiff to a facility with a "medical infirmity unit" because the request was not a reasonable accommodation); *see also Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir. 2000).

Here, Mr. Sanchez concedes that he was provided a reasonable accommodation by means of assignment to a handicap accessible cell. SA-3. Mr. Sanchez requested a reasonable accommodation in the form of a move to another handicap accessible cell until the leak was fixed, on May 16, 2020, the day after he fell. SA-17.

Mr. Sanchez received a reasonable accommodation: his leak was repaired. *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016); *Kearney v. N.Y.S. D.O.C.S.*, 11-CV-1281, 2013 U.S. Dist. LEXIS 140932, *8 (N.D.N.Y. Jul. 31, 2013) (citing *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012)).

Here, the District Court found that Plaintiff did receive a reasonable accommodation by way of repair. The fact that the leak was

fixed negates Plaintiff's allegation that Defendants refused to provide reasonable accommodation.

## CONCLUSION

This Court should affirm the District Court's grant of summary judgment for the defendants.

Respectfully submitted,

WILLIAM TONG
ATTORNEY GENERAL

By: *<u>/s/ DeAnn S. Varunes</u>*
DeAnn S. Varunes
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5450
Fax: (860) 808-5591
Email: DeAnn.Varunes@ct.gov

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

As required by Federal Rule of Appellate Procedure (FRAP) 32(g)(1), I hereby certify that this brief complies with the type-volume limitations of FRAP 32(a)(7)(B), as modified by Second Circuit Local Rule 32.1(a)(4), in that this brief contains 5,322 words, excluding the parts of the brief exempted by FRAP 32(f). I further certify that this brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32 (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

*/s/ DeAnn S. Varunes*
DeAnn S. Varunes
Assistant Attorney General

Dated: December 19, 2023

## CERTIFICATION OF SERVICE

I hereby certify that on this 19th day of December 2023, I caused the foregoing brief to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ DeAnn S. Varunes*
DeAnn S. Varunes
Assistant Attorney General